(Slip Opinion)          OCTOBER TERM, 2014          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BANK OF AMERICA, N. A. *v.* CAULKETT

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 13–1421.   Argued March 24, 2015—Decided June 1, 2015*

Respondent debtors each filed for Chapter 7 bankruptcy, and each owned a house encumbered with a senior mortgage lien and a junior mortgage lien, the latter held by petitioner bank.  Because the amount owed on each senior mortgage is greater than each house's current market value, the bank would receive nothing if the properties were sold today.  The junior mortgage liens were thus wholly underwater.  The debtors sought to void their junior mortgage liens under §506 of the Bankruptcy Code, which provides, "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void."  11 U. S. C. §506(d).  In each case, the Bankruptcy Court granted the motion, and both the District Court and the Eleventh Circuit affirmed.

*Held*: A debtor in a Chapter 7 bankruptcy proceeding may not void a junior mortgage lien under §506(d) when the debt owed on a senior mortgage lien exceeds the current value of the collateral if the creditor's claim is both secured by a lien and allowed under §502 of the Bankruptcy Code.  Pp. 2–7.

(a) The debtors here prevail only if the bank's claims are "not . . . allowed secured claim[s]."  The parties do not dispute that the bank's claims are "allowed" under the Code.  Instead, the debtors argue that the bank's claims are not "secured" because §506(a)(1) provides that "[a]n allowed claim . . . is a secured claim to the extent of the value of such creditor's interest in . . . such property" and "an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim."  Because the value of the bank's

————————

*Together with No. 14–163, *Bank of America, N. A.* v. *Toledo-Cardona*, also on certiorari to the same court.

Syllabus

interest here is zero, a straightforward reading of the statute would seem to favor the debtors. This Court's construction of §506(d)'s term "secured claim" in *Dewsnup* v. *Timm*, 502 U. S. 410, however, forecloses that reading and resolves the question presented here. In declining to permit a Chapter 7 debtor to "strip down" a partially underwater lien under §506(d) to the value of the collateral, the Court in *Dewsnup* concluded that an allowed claim "secured by a lien with recourse to the underlying collateral . . . does not come within the scope of §506(d)." *Id.,* at 415. Thus, under *Dewsnup*, a "secured claim" is a claim supported by a security interest in property, regardless of whether the value of that property would be sufficient to cover the claim. Pp. 2–4.

(b) This Court declines to limit *Dewsnup* to partially underwater liens. *Dewsnup*'s definition did not depend on such a distinction. Nor is this distinction supported by *Nobelman* v. *American Savings Bank*, 508 U. S. 324, which addressed the interaction between the meaning of the term "secured claim" in §506(a)—a definition that *Dewsnup* declined to use for purposes of §506(d)—and an entirely separate provision, §1322(b)(2). See 508 U. S., at 327–332. Finally, the debtors' suggestion that the historical and policy concerns that motivated the Court in *Dewsnup* do not apply in the context of wholly underwater liens is an insufficient justification for giving the term "secured claim" a different definition depending on the value of the collateral. Ultimately, the debtors' proposed distinction would do nothing to vindicate §506(d)'s original meaning and would leave an odd statutory framework in its place. Pp. 5–7.

No. 13–1421, 566 Fed. Appx. 879, and No. 14–163, 556 Fed. Appx. 911, reversed and remanded.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, GINSBURG, ALITO, and KAGAN, JJ., joined, and in which KENNEDY, BREYER, and SOTOMAYOR, JJ., joined except as to the footnote.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

Nos. 13–1421 and 14–163

BANK OF AMERICA, N. A., PETITIONER
13–1421          *v.*
DAVID B. CAULKETT


BANK OF AMERICA, N. A., PETITIONER
14–163          *v.*
EDELMIRO TOLEDO-CARDONA

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[June 1, 2015]

JUSTICE THOMAS delivered the opinion of the Court.*

Section 506(d) of the Bankruptcy Code allows a debtor to void a lien on his property "[t]o the extent that [the] lien secures a claim against the debtor that is not an allowed secured claim." 11 U. S. C. §506(d). These consolidated cases present the question whether a debtor in a Chapter 7 bankruptcy proceeding may void a junior mortgage under §506(d) when the debt owed on a senior mortgage exceeds the present value of the property. We hold that a debtor may not, and we therefore reverse the judgments of the Court of Appeals.

## I

The facts in these consolidated cases are largely the

————————
*JUSTICE KENNEDY, JUSTICE BREYER, and JUSTICE SOTOMAYOR join this opinion, except as to the footnote.

same. The debtors, respondents David Caulkett and Edelmiro Toledo-Cardona, each have two mortgage liens on their respective houses. Petitioner Bank of America (Bank) holds the junior mortgage lien—*i.e.*, the mortgage lien subordinate to the other mortgage lien—on each home. The amount owed on each debtor's senior mortgage lien is greater than each home's current market value. The Bank's junior mortgage liens are thus wholly underwater: because each home is worth less than the amount the debtor owes on the senior mortgage, the Bank would receive nothing if the properties were sold today.

In 2013, the debtors each filed for Chapter 7 bankruptcy. In their respective bankruptcy proceedings, they moved to "strip off"—or void—the junior mortgage liens under §506(d) of the Bankruptcy Code. In each case, the Bankruptcy Court granted the motion, and both the District Court and the Court of Appeals for the Eleventh Circuit affirmed. *In re Caulkett*, 566 Fed. Appx. 879 (2014) (*per curiam*); *In re Toledo-Cardona*, 556 Fed. Appx. 911 (2014) (*per curiam*). The Eleventh Circuit explained that it was bound by Circuit precedent holding that §506(d) allows debtors to void a wholly underwater mortgage lien.

We granted certiorari, 574 U. S. ___ (2014), and now reverse the judgments of the Eleventh Circuit.

II

Section 506(d) provides, "To the extent that a lien secures a claim against the debtor that is not an *allowed secured claim*, such lien is void." (Emphasis added.) Accordingly, §506(d) permits the debtors here to strip off the Bank's junior mortgages only if the Bank's "claim"—generally, its right to repayment from the debtors, §101(5)—is "not an allowed secured claim." Subject to some exceptions not relevant here, a claim filed by a creditor is deemed "allowed" under §502 if no interested party

objects or if, in the case of an objection, the Bankruptcy Court determines that the claim should be allowed under the Code. §§502(a)–(b). The parties agree that the Bank's claims meet this requirement. They disagree, however, over whether the Bank's claims are "secured" within the meaning of §506(d).

The Code suggests that the Bank's claims are not secured. Section 506(a)(1) provides that "[a]n allowed claim of a creditor secured by a lien on property . . . is a *secured claim* to the extent of the value of such creditor's interest in . . . such property," and "an *unsecured claim* to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." (Emphasis added.) In other words, if the value of a creditor's interest in the property is zero—as is the case here—his claim cannot be a "secured claim" within the meaning of §506(a). And given that these identical words are later used in the same section of the same Act—§506(d)—one would think this "presents a classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Desert Palace, Inc.* v. *Costa*, 539 U. S. 90, 101 (2003) (internal quotation marks omitted). Under that straightforward reading of the statute, the debtors would be able to void the Bank's claims.

Unfortunately for the debtors, this Court has already adopted a construction of the term "secured claim" in §506(d) that forecloses this textual analysis. See *Dewsnup* v. *Timm*, 502 U. S. 410 (1992). In *Dewsnup*, the Court confronted a situation in which a Chapter 7 debtor wanted to "'strip down'"—or reduce—a partially underwater lien under §506(d) to the value of the collateral. *Id.,* at 412–413. Specifically, she sought, under §506(d), to reduce her debt of approximately $120,000 to the value of the collateral securing her debt at that time ($39,000). *Id.,* at 413. Relying on the statutory definition of "'allowed secured

claim'" in §506(a), she contended that her creditors' claim was "secured only to the extent of the judicially determined value of the real property on which the lien [wa]s fixed." *Id.,* at 414.

The Court rejected her argument. Rather than apply the statutory definition of "secured claim" in §506(a), the Court reasoned that the term "secured" in §506(d) contained an ambiguity because the self-interested parties before it disagreed over the term's meaning. *Id.,* at 416, 420. Relying on policy considerations and its understanding of pre-Code practice, the Court concluded that if a claim "has been 'allowed' pursuant to §502 of the Code and is secured by a lien with recourse to the underlying collateral, it does not come within the scope of §506(d)." *Id.,* at 415; see *id.,* at 417–420. It therefore held that the debtor could not strip down the creditors' lien to the value of the property under §506(d) "because [the creditors'] claim [wa]s secured by a lien and ha[d] been fully allowed pursuant to §502." *Id.,* at 417. In other words, *Dewsnup* defined the term "secured claim" in §506(d) to mean a claim supported by a security interest in property, regardless of whether the value of that property would be sufficient to cover the claim. Under this definition, §506(d)'s function is reduced to "voiding a lien whenever a claim secured by the lien itself has not been allowed." *Id.,* at 416.

*Dewsnup*'s construction of "secured claim" resolves the question presented here. *Dewsnup* construed the term "secured claim" in §506(d) to include any claim "secured by a lien and . . . fully allowed pursuant to §502." *Id.*, at 417. Because the Bank's claims here are both secured by liens and allowed under §502, they cannot be voided under the definition given to the term "allowed secured claim" by *Dewsnup*.

## III

The debtors do not ask us to overrule *Dewsnup*,[†] but instead request that we limit that decision to partially—as opposed to wholly—underwater liens. We decline to adopt this distinction. The debtors offer several reasons why we should cabin *Dewsnup* in this manner, but none of them is compelling.

To start, the debtors rely on language in *Dewsnup* stating that the Court was not addressing "all possible fact situations," but was instead "allow[ing] other facts to await their legal resolution on another day." *Id.*, at 416–417. But this disclaimer provides an insufficient foundation for the debtors' proposed distinction. *Dewsnup* considered several possible definitions of the term "secured claim" in §506(d). See *id.*, at 414–416. The definition it settled on—that a claim is "secured" if it is "secured by a lien" and "has been fully allowed pursuant to §502," *id.*, at 417—does not depend on whether a lien is partially or wholly underwater. Whatever the Court's hedging language meant, it does not provide a reason to limit *Dewsnup* in the manner the debtors propose.

The debtors next contend that the term "secured claim"

_____

[†] From its inception, *Dewsnup* v. *Timm*, 502 U. S. 410 (1992), has been the target of criticism. See, *e.g., id.,* at 420–436 (SCALIA, J., dissenting); *In re Woolsey*, 696 F. 3d 1266, 1273–1274, 1278 (CA10 2012); *In re Dever*, 164 B. R. 132, 138, 145 (Bkrtcy. Ct. CD Cal. 1994); Carlson, Bifurcation of Undersecured Claims in Bankruptcy, 70 Am. Bankr. L. J. 1, 12–20 (1996); Ponoroff & Knippenberg, The Immovable Object Versus the Irresistible Force: Rethinking the Relationship Between Secured Credit and Bankruptcy Policy, 95 Mich. L. Rev. 2234, 2305–2307 (1997); see also *Bank of America Nat. Trust and Sav. Assn.* v. *203 North LaSalle Street Partnership*, 526 U. S. 434, 463, and n. 3 (1999) (THOMAS, J., concurring in judgment) (collecting cases and observing that "[t]he methodological confusion created by *Dewsnup* has enshrouded both the Courts of Appeals and . . . Bankruptcy Courts"). Despite this criticism, the debtors have repeatedly insisted that they are not asking us to overrule *Dewsnup*.

in §506(d) could be redefined as any claim that is backed by collateral with *some* value. Embracing this reading of §506(d), however, would give the term "allowed secured claim" in §506(d) a different meaning than its statutory definition in §506(a). We refuse to adopt this artificial definition.

Nor do we think *Nobelman* v. *American Savings Bank*, 508 U. S. 324 (1993), supports the debtors' proposed distinction. *Nobelman* said nothing about the meaning of the term "secured claim" in §506(d). Instead, it addressed the interaction between the meaning of the term "secured claim" in §506(a) and an entirely separate provision, §1322(b)(2). See 508 U. S.*,* at 327–332. *Nobelman* offers no guidance on the question presented in these cases because the Court in *Dewsnup* already declined to apply the definition in §506(a) to the phrase "secured claim" in §506(d).

The debtors alternatively urge us to limit *Dewsnup*'s definition to the facts of that case because the historical and policy concerns that motivated the Court do not apply in the context of wholly underwater liens. Whether or not that proposition is true, it is an insufficient justification for giving the term "secured claim" in §506(d) a different definition depending on the value of the collateral. We are generally reluctant to give the "same words a different meaning" when construing statutes, *Pasquantino* v. *United States*, 544 U. S. 349, 358 (2005) (internal quotation marks omitted), and we decline to do so here based on policy arguments.

Ultimately, embracing the debtors' distinction would not vindicate §506(d)'s original meaning, and it would leave an odd statutory framework in its place. Under the debtors' approach, if a court valued the collateral at one dollar more than the amount of a senior lien, the debtor could not strip down a junior lien under *Dewsnup*, but if it valued the property at one dollar less, the debtor could strip

off the entire junior lien. Given the constantly shifting value of real property, this reading could lead to arbitrary results. To be sure, the Code engages in line-drawing elsewhere, and sometimes a dollar's difference will have a significant impact on bankruptcy proceedings. See, *e.g.,* §707(b)(2)(A)(i) (presumption of abuse of provisions of Chapter 7 triggered if debtor's projected disposable income over the next five years is $12,475). But these lines were set by Congress, not this Court. There is scant support for the view that §506(d) applies differently depending on whether a lien was partially or wholly underwater. Even if *Dewsnup* were deemed not to reflect the correct meaning of §506(d), the debtors' solution would not either.

\*  \*  \*

The reasoning of *Dewsnup* dictates that a debtor in a Chapter 7 bankruptcy proceeding may not void a junior mortgage lien under §506(d) when the debt owed on a senior mortgage lien exceeds the current value of the collateral. The debtors here have not asked us to overrule *Dewsnup*, and we decline to adopt the artificial distinction they propose instead. We therefore reverse the judgments of the Court of Appeals and remand the cases for further proceedings consistent with this opinion.

*It is so ordered.*